## STATE *v.* OLD.

### (*Nashville.* March 20, 1896.)

1. ILLEGAL VOTING. *Proof of payment of poll tax omitted.*

    A voter is indictable for misdemeanor, and his ballot is illegal and cannot be received, or, if received, cannot be counted, who, though having paid the poll tax assessed against him for the year next preceding the election, fails to give the judges of the election where he offers to vote that satisfactory evidence of such payment which is prescribed by the statutes, to wit: either (1) the original receipt therefor, or (2) his written affidavit, duly signed, of payment and loss of receipt, or (3) a certified copy of the receipt by the Trustee, where payment was made to him directly, or (4) the Trustee's certificate that the records of his office show payment to a deputy collector or Constable.

    Constitution construed: Art. IV., Sec. 1.

    Acts construed: Acts 1890, Ch. 26 (Ex. Ses.); Acts 1891, Ch. 222; Acts 1891, Ch. 23 (Ex. Ses.).

2. CONSTITUTIONAL LAW. *Legislative power to define and declare "satisfactory evidence" of payment of poll tax.*

    The Legislature had undoubted power, and it was its plain duty, under Art. IV., Sec. 1, of the Constitution of 1870, to define and declare what shall constitute "satisfactory evidence" of payment of poll taxes to be adduced by voters before judges of election. The "freedom of elections and the purity of the ballot box" demanded such legislation. The statutes passed for this purpose afford just and plain rules, convenient and easy of observance, and well calculated to promote uniformity, and to prevent fraud and oppression in the conduct of elections. (*Post, pp. 733, 734.*)

    Case cited and approved: Cook *v.* State, 90 Tenn., 407.

---

### FROM WAYNE.

---

Appeal in error from Circuit of Wayne County. ED. D. PATTERSON, Judge.

State v. Old.

Attorney-general PICKLE for State.

——— for Old.

SNODGRASS, C. J.    Defendant was indicted in the Circuit Court of Wayne County for illegal voting. The charge was that, in a certain election, held on the fifteenth of October, 1895, in the fourth civil district of Wayne County, to elect a Justice of the Peace, the defendant, being over the age of twenty-one years and having had a poll tax assessed against him for the year next preceding the election, which he had paid, did unlawfully vote in said election without furnishing to the judges thereof satisfactory evidence that he had paid said poll tax, to wit: That he did not present to the judges of said election his original poll tax receipt, or a duly certified duplicate and copy of the same, or the duly authenticated certificate of a constable or deputy collector, as required by law, nor make affidavit in writing signed by him that he had paid his poll tax and that his receipt therefor was lost or misplaced.    This indictment was quashed, on motion of defendant, and the State appealed in error.

The correctness or incorrectness of the judgment depends upon the question whether Chapter 23 of the Acts of the extra session of the Legislature of 1891 is or is not constitutional.    There is no doubt of the application of that Act, nor is there any objection to the manner of its passage.    On August 7, 1891, Governor Buchanan issued his proclamation

convening the General Assembly in extraordinary
session. The law in controversy was included in
the call, and the manner of its subsequent passage
by the Legislature thus convened by the Governor,
its regular enactment by that body, and its approval
by the Governor, are not questioned. It was properly
passed on the eighteenth and approved on the nine-
teenth of September, 1891. Acts Ex. Session 1891,
pages 45-48. Nor is there any question of the
validity of the indictment thereunder, as to form
or terms.

The first section of the Act provided "that
Chapter 222 of the Acts of the regular session,
approved March 30, 1891, regulating the elective
franchise [which Act was itself an amendment of
the Acts of 1890, Ex. Sess., Ch. 26, p. 67], in
accordance with Art. IV., Sec. 1, of the Consti-
tution of the State, be so amended as to require
that the satisfactory evidence to be furnished by
the voter to the judges of the election, whether
general or special, whether national, State, county,
or municipal, that he has paid the poll tax contem-
plated by the Constitution assessed against him, if
any, for the year next preceding said election, shall
consist of the original poll tax receipt or a duly
certified duplicate and copy of same, or the duly au-
thenticated certificate set out in Section 8 [which pro-
vided for a Trustee's certificate and its form], when
said tax has been paid to a Constable, and not to
said Trustee, properly certified by the Trustee, or

shall make affidavit in writing and signed by the voter that he has paid his poll tax and that his receipt is lost or misplaced, which affidavit shall be filed with the said judges and by them attached and made an exhibit to the returns of said election." The fifth section of this Act provided "that any person voting, or any judge of any election permitting, knowingly, any person to vote in the same without first having complied with the provisions of Section 1 of this Act (the section just quoted) shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than fifty dollars and imprisoned in the county jail or workhouse ninety days."

A reference to the indictment clearly shows that it states an offense under this Act; and, if the Act be valid, is clearly good. The objection of the defendant is that the Act is unconstitutional, and this involves the consideration of the constitutional provisions which it is urged on the one hand invalidate and on the other authorize this statute. These are embodied in Art. IV., Sec. 1, of the Constitution of 1870. That section reads as follows:

"Every male citizen of the age of twenty-one years, being a citizen of the United States, and a resident of this State for twelve months, and of the county wherein he may offer his vote for six months next preceding the day of election, shall be entitled to vote for members of the General Assembly and other civil officers of the county or district in which

he resides; and there shall be no qualification attached to the right of suffrage, except that each voter shall give to the judges of election where he offers to vote satisfactory evidence that he has paid the poll taxes assessed against him for such preceding period as the Legislature shall prescribe, and at such time as may be prescribed by law, without which his vote cannot be received. And all male citizens of the State shall be subject to the payment of poll taxes and the performance of military duty, within such ages as may be prescribed by law. The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.''

Independently of the conclusion of this provision, it cannot be successfully denied, and is not disputed, that the Legislature would have had the right to make the furnishing of ''satisfactory evidence'' of the payment of poll tax a prerequisite to voting, and its nonfurnishing an indictable offense, and the original Act of 1890, which we have cited, confined itself to these general terms. The first amendatory Act of 1891 provided that the ''satisfactory evidence'' should consist of the original poll tax receipt, or a duly certified copy, or an affidavit that the voter had paid his poll tax, and that his receipt was lost or misplaced. Acts 1891, p. 436. The Act we are considering enumerated these,

and added provision for certificate when paid to a Constable—not an enlargement, but rather an explanatory provision covering case of such payment, which might have been of doubtful construction under the first Act of 1891.

The objection made to the Act is not that the Legislature could not prescribe that "satisfactory evidence" should be furnished, nor is it objected that the Legislature, in prescribing that such evidence should be a receipt for payment, or a certified copy, or the affidavit of the voter that he had paid the tax, and had such receipt which was lost or misplaced, was the requiring of evidence not satisfactory, or the requirement of evidence difficult to make, or which, in any event, could exclude the voter from the exercise of his right to vote. It is obvious that to require the original alone, or either the original or copy of receipt, as the only evidence, might make voting a matter of difficulty, and, in case of loss, an impossibility; but when to these is added the provision that the voter's own affidavit of their loss is sufficient to enable him to vote without them, it is obvious that no hindrance is imposed to his free and unobstructed right of suffrage. It cannot be denied that the original receipt was good evidence, nor, in its absence, that a certified copy is good evidence. It is only in favor of the right, however, that the Legislature makes them "satisfactory," for it might be true that a voter might have either, and yet not in fact

have paid the tax. So, it is true that his affidavit might be false, and still it is made evidence. In other words, the Legislature has left with the voter, unhampered and unhindered, the opportunity, as well as the right, to furnish such satisfactory evidence in the kind of evidence prescribed, and having done so, have no more nor less discharged, than it was authorized to do, its constitutional duty. If, under the guise of requiring satisfactory evidence, it had acted arbitrarily, and contrary to the spirit of the constitution, if not to its letter, its action might well have been held void, but when it adopts, even under that part of the constitutional article requiring the offering of satisfactory evidence, only the production of that evidence which all mankind would deem to be such as the voter could easiest make, and which is most naturally expected to establish the fact to be shown, it could not be held that the Legislature had transcended its power under the constitution, had the first clause of Section 1 of Article IV. stood alone.

But the clause in question does not stand alone. It was obvious to the constitution makers that fraud and force might be attempted in our elections as they had been everywhere else, and so it was deemed proper, though it was probably not essential (for, in the absence of restriction by the Constitution, the Legislature would have possessed general power on this subject, as all others of legislative nature), to add specific power to enact laws "to secure the

freedom of elections and the purity of the ballot box," thus, putting its constitutional authority beyond cavil under the general terms of the Constitution as to "satisfactory evidence;" but, under such terms, repeated only and literally in a statutory enactment (as was the case in the Act of 1890), and leaving this phrase to be construed as might best accord with the capacity, judgment, and partizan bias (where it might exist) of all the thousands of judges of elections who would thereafter have to construe and give it effect, it is clear that no greater source of oppression and impurity of the ballot box could be conceived than might be originated in diverse and improper construction and exercise of such undefined power by the judges of election. Voters might be denied the privilege of suffrage upon the most false and flimsy pretexts of the insufficiency of their evidence of payment of poll tax, and, on the other hand, might be permitted improperly to exercise it upon the most unsatisfactory, and, indeed, upon no evidence, provided the judges of election should hold themselves satisfied with whatever was offered or with none.

The framers of the Constitution, therefore, did not intend to leave the Legislature, by any restriction, powerless to prevent this result, but especially, along with this declared authority to legislate on the poll tax provision so as to designate the time preceding election for which it should be paid and ages within which it should be paid, authorized it,

on this and all other subjects, to enact such laws as would secure the freedom of elections and the purity of the ballot box. Within proper limits, the Legislature is the judge of what such laws should be, and it was clearly within their province to say that this was such a law. *Cook* v. *State*, 6 Pickle, 407. It is obvious, too, that it is so in fact. We have already shown that the evidence which the Act declares to be satisfactory .is that most naturally and most easily obtainable, and to be made by the voter, and that only which ordinarily and by common consent is assumed by all to be the acceptable evidence of the fact of payment.

But we have also suggested that while, for all convenient and practical purposes, it is the most available and best evidence, it is not, in fact, the best. The best evidence which could be required, perhaps, by any judge of election would be the actual payment in their presence, by the voter, of his tax to the collector. Now, suppose,. under the Constitution, the Legislature had no power to prescribe what should be satisfactory evidence, and the phrase left in general terms to the judges of election for their construction and their guidance, and that some or all judges would be satisfied with no less evidence than that suggested, it is obvious that such view would be subversive, practically, of the right of suffrage. So, other modes of proof might be demanded—as, that the voter should produce witnesses, to prevent imposition of forged receipts on

the judges, and then witnesses of the good character of these, that the judges might be thoroughly satisfied. And so illustrations might be multiplied of the various constructions which, naturally and innocently, different judges of elections might put upon these words, to say nothing of the multiplied frivolous and false constructions which extreme partizan officials might give to them to defeat or obstruct the votes of those who should be of another political party than that of the judges.

And, too, in the matter of permitting voters to cast their ballots on "satisfactory evidence" of poll tax payment, what a diversity of construction would prevail! In one case the mere statement of the voter would be deemed satisfactory, in another not; and so of unsworn statements of other witnesses for the voter. And, again, because some one of the judges, or others, knew, or did not know, that he had voted at a former election in same year, or because he was good for the tax, he is presumed to have paid it, or, being honest, that presumption is indulged; or because somebody would say that they had heard the collector say this tax was paid, or that all poll tax of the given county was paid, hence no special evidence in the particular case is required, etc. These illustrations, too, might be, multiplied indefinitely, but the ones given are sufficient to show how differently and erroneously might be construed and applied the general terms used in the Constitution if it was not permitted to be given one easy,

fixed, plain, and natural limitation by the Legis-
lature; or, speaking more accurately, if the Legis-
lature was not permitted to prescribe just, plain, easily
observable offerings of proof as the "satisfactory
evidence" of the Constitution, and thus destroy the
facility to suppress the freedom of elections and to
sully the purity of the ballot box, which lurks be-
neath the dangerous limits of this general phraseology.

It was not only, therefore, within the power of
the Legislature, but it was the duty of that body,
to pass some such law as would define this evidence,
and compel judges of election to accept it when
offered, in all cases alike, and thus enable every
voter in Tennessee to cast his free and unhindered
ballot, and, at the same time, to prevent the denial
to any voter, however low and humble, ignorant
or illiterate, of such right by the adoption of such
method of evidence as he could get, or, if he could
not get, could give himself, when he went to vote,
and thus make it impossible for him to be cheated
out of the privilege of voting, under the constitu-
tional provision on this question. On the general
question of the validity and strict binding effects of
such laws as require not merely the existence of
certain facts, but particular proof of their existence
to be made, as a prerequisite to voting, there is no
doubt, and we refer to a few of the authorities
where the question is more elaborately considered.
It is too well settled now to need argument or
extended statement. Payne on Elections, § 451;

Brightly's Leading Cases on Elections, p. 452; *Cusack's Election*, 136 Pa. St. Rep., 476; Cooley's Const. Lim., p. 758; 13 Penn. Co. Ct. Rep., 544; *In re Duffy*, 4 Brewster.

And, that a vote cast without such prerequisite proof of fact is illegal, though the fact existed, is well recognized. Some of the cases referred to, and numerous others, cover this proposition.

These are on the general subject, but the express language of our Constitution is not (merely) that the voter shall pay, but that "he shall give to the judges of election satisfactory evidence of payment, . . . without which his vote cannot be received." The statute, in pursuance of this provision, requires the giving of such satisfactory evidence, and makes the failure to do so an indictable offense.

The Court makes neither the Constitution nor the law, but upon it is devolved the duty of applying them, and, so doing, we are left no alternative but to hold the indictment in this case valid.

The judgment of the Circuit Court is, therefore, reversed, and the case remanded for trial.